**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-60097-CR-UNGARO(s)(s)**

**UNITED STATES OF AMERICA,**

vs.

**ANSON JOACHIN,**

        **Defendant.**
_____/

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF THE CONSPIRACY, INEXTRICABLY INTERTWINED EVIDENCE OR, IN THE ALTERNATIVE, 404(b) EVIDENCE**

The United States of America, through the undersigned Assistant United States Attorney, hereby provides notice that it intends to introduce evidence of five real estate transactions involving the defendant at trial that are admissible as evidence of the conspiracy itself, as inextricably intertwined evidence, or in the alternative, as 404(b) evidence.[1]

**FACTS**

On July 29, 2010, a Federal Grand Jury in Fort Lauderdale, Florida returned a Second Superseding Indictment charging defendant Anson Joachin with a total of 11 counts: one count of conspiracy to commit wire and mail fraud (Count 1); five substantive counts of mail fraud; and five substantive counts of wire fraud (Counts 2 through 11). The dates of the charged conspiracy in Count 1 include from in or around June 2006 through in or around September 2007.

Defendant Anson Joachin was the head of a real estate purchasing and mortgage scheme operating in Broward County, Florida during the conspiracy. The United States intends to introduce

---

[1] The United States believes this evidence is admissible as part of the charged conspiracy and/or as inextricably intertwined evidence. In addition, this evidence is admissible as 404(b) evidence and we provide this notice evidence in an abundance of caution.

evidence of five additional real estate transactions at trial – in addition to the ones described in detail in the Indictment -- that are admissible in three distinct ways: (1) as part of the conspiracy; (2) as evidence that is intrinsic, inextricably intertwined and necessary to complete the story of the crime; or (3) as 404(b) evidence. The additional transactions the Government seeks to admit are:

| TRANSACTION NUMBER | APPROX. CLOSING DATE | PROPERTY ADDRESS | SELLER | STRAW PURCHASER | APPROX. PRICE |
|---|---|---|---|---|---|
| 1 | 5/30/2006 | 9219 South Hampton Place, Boca Raton, Florida | C.B. | N.B. | $420,000 |
| 2 | 6/12/2006 | 915 N.E. 15th Street, Fort Lauderdale, Florida | R.J. | N.B. | $400,000 |
| 3 | 6/23/2006 | 4441 NW 70th Avenue, Lauderhill, Florida | Charles Alexander[2] | N.B. | $465,000 |
| 4 | 7/13/2006 | 5801 NW 15th Street, Fort Lauderdale, Florida | Charles Alexander | N.B. | $375,000 |
| 5 | 11/3/2006 | 4441 NW 70th Avenue, Lauderhill, Florida | Refinance | N.B. | Refinance |

---

[2] The United States intends to prove at trial that the defendant, ANSON JOACHIN, posed as Charles Alexander and was the seller of the properties in transactions 3 and 4.

The undersigned notes that the documents relating to all of these properties were previously provided to defense counsel almost two months ago through the Government's Response to the Standing Discovery Order [DE: 48] on or about June 11, 2010. A more detailed description of these transactions the Government seeks to admit are as follows:

**TRANSACTION 1:** This transaction closed on or about May 30, 2006. The straw purchaser, N.B., stated on her Form 1003 Loan Application that she was employed at the defendant's business for three years as "General Manager" making a salary of approximately over $15,000 per month. The lender wired the money for this property and the mails were used to send the closing and other documentation to the lenders. The United States will introduce evidence that these statements were false and that these fraudulent statements were made at the defendant's direction.

**TRANSACTION 2:** This transaction closed on or about June 12, 2006. The same straw purchaser, N.B., stated on her Form 1003 Loan Application that she was employed at the defendant's business for three years as "General Manager" making a salary of approximately over $15,000 per month. The lender wired the money for this property and the mails were used to send the closing and other documentation to the lenders. The United States will introduce evidence that these statements were false and that these fraudulent statements were made at the defendant's direction.

**TRANSACTION 3:** This transaction closed on or about June 23, 2006. Again, the same straw purchaser, N.B., stated on her Form 1003, Loan Application that she was employed at the defendant's business for three years as "General Manager" making a salary of approximately over $15,000 per month. The lender wired the money for this property and the mails were used to send the closing and other documentation to the lenders. The United States will introduce evidence that

these statements were false and that these fraudulent statements were made at the defendant's direction. Furthermore, in this transaction, as in those in Counts 2 and 7 of the Second Superseding Indictment, Charles Alexander is the seller. As aforementioned, the United States intends to prove at trial that the defendant posed as Charles Alexander and was the seller of this property.

**TRANSACTION 4:** This transaction closed on or about July 13, 2006. Once again, the same straw purchaser, N.B., stated on her Form 1003 Loan Application that she was employed at the defendant's business for three years as "General Manager" making a salary of approximately over $15,000 per month. The lender wired the money for this property and the mails were used to send the closing and other documentation to the lenders. The United States will introduce evidence that these statements were false and that these fraudulent statements were made at the defendant's direction. Moreover, in this transaction, as in those in Counts 2 and 7 of the Second Superseding Indictment, Charles Alexander is the seller. As aforementioned, the United States intends to prove at trial that the defendant posed as Charles Alexander and was the seller of this property.

**TRANSACTION 5:** This transaction closed on or about November 3, 2006 and was a refinance – by the defendant and the same straw buyer, N.B. – of transaction number three. The United States will introduce evidence that this property had to be refinanced because the original lender asked for additional tax documentation after the loan closed, but the defendant declined to provide that information and wanted the property refinanced instead, so he would not have to provide the tax information and, therefore, expose his scheme.

**ARGUMENT**

**THESE TRANSACTIONS ARE ADMISSIBLE IN THE GOVERNMENT'S CASE-IN-CHIEF BECAUSE THEY ARE: (1) AN INTEGRAL PART OF THE CONSPIRACY, (2) INTRINSIC EVIDENCE TO THE CHARGED OFFENSES OR (3) 404(b) EVIDENCE**

1.  These Transactions Are Integral Evidence of the Conspiracy

These additional transactions fall within the dates of the conspiracy to commit mail and wire fraud charged in Count One of the Second Superseding Indictment. In addition to falling within the ambit of the conspiracy, these properties were incorporated by reference specifically in paragraph 45 of the Second Superseding Indictment:

> Beginning as early as June 2006, the defendants, **ANSON JOACHIN, JOHN FISHER, TRACEY BALLI, JUSTINA BRYAN, DELANO MCLENNON** and other unindicted co-conspirators caused more than 10 real estate transactions to occur in which the documents submitted and caused to be submitted to mortgage lenders contained materially false and fraudulent information. These documents subsequently resulted in closings by defendants **JUSTINA BRYAN, DELANO MCLENNON,** unindicted co-conspirator A.S. and other unindicted co-conspirators. The aggregate dollar amount of the loans procured fraudulently by the defendants **ANSON JOACHIN, JOHN FISHER, TRACEY BALLI, JUSTINA BRYAN, DELANO MCLENNON** and others from the mortgage lenders exceeded $5,000,000.00.

Moreover, the Eleventh Circuit has held that in a conspiracy prosecution, the government is not limited to overt acts pleaded in proving the conspiracy, but may show other acts of conspirators that occurred during life of conspiracy. See United States v. Perez, 489 F.2d 51, 70 (11th Cir. 1973). Therefore, these transactions are admissible as part of the charged conspiracy.

2.  These Transactions Are Intrinsic, Inextricably Intertwined Evidence

When evidence of prior bad act is inextricably intertwined with evidence of the charged crime, the prior bad acts are admissible as intrinsic evidence. See United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir.1992). Evidence of criminal activity other than the offense charged is intrinsic to the offense when the evidence is "(1) an uncharged offense which arose out of the same

5

transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." See United States v. Ellisor, 522 F.3d 1255, 1269 (11th Cir.2008) (quotation marks and citations omitted). The intertwined evidence is admissible if it tends to explain the context, motive, and set-up of the crime and is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." See United States v. Williford, 764 F.2d 1493, 1499 (11th Cir.1985).  Notably, in fraud cases, evidence of a pattern of fraudulent conduct in which the defendant, along with his co-conspirators, participated is "intrinsic" and not "extrinsic" evidence subject to Rule 404(b).  See United States v. Muscatell, 42 F.3d. 627, 630 (11th Cir. 1995)(holding – in a real estate scheme conspiracy – that the evidence was intrinsic because it involved "a series of transactions involving the same principal actors, in the same roles, employing the same modus operandi").

All of the aforementioned transactions took place during the pendency of the charged conspiracy to commit mail and wire fraud; these transactions were incorporated by reference in the conspiracy section (Count 1) of the Second Superseding Indictment; these transactions are inextricably intertwined with the evidence of the other charged properties; and these transactions are necessary to complete the story of the crime.  Furthermore, these transactions explain the defendant's context and motive in committing his crimes.

      3.      <u>Alternatively, The Transactions Are Admissible as 404(b) Evidence</u>

Additionally, Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is admissible to prove, *inter alia*, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  Rule 404(b) is

6

"a rule of inclusion." See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003); accord United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989) ("[Rule 404(b)] is one of inclusion which allows such evidence unless it tends to prove only criminal propensity. The list provided by the rule is not exhaustive and 'the range of relevancy outside the ban is almost infinite." (citations omitted)).  [A]ccordingly, 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." Jernigan, 341 F.3d at 1280 (internal quotation marks omitted).

In the alternative, these transactions should be admitted to prove motive, intent, knowledge, modus operandi and lack of mistake because there are striking similarities between these transactions and the other transactions in the Second Superseding Indictment, including the same loan processors, similar false statements about the employment, and similar fabrications of income, including the fabrication that the straw buyer actually worked at the defendant's business. Additionally, in two of these transactions the defendant posed as Charles Alexander to sell the property, as he did involving the property in Counts 2 and 7 of the Second Superseding Indictment (and paragraphs 10-16 of the Count 1 conspiracy charge).

## **Conclusion**

WHEREFORE, the United States respectfully seeks to present evidence of the five additional transactions because they are integral evidence of the conspiracy; the evidence is intrinsic and inextricably inextricably intertwined to the fraud; and, alternatively, these transactions are 404(b) evidence that prove motive, intent, knowledge, modus operandi and lack of mistake of the defendant.

         Respectfully submitted,

         WIFREDO A. FERRER
         UNITED STATES ATTORNEY

By: s/ *Randall D. Katz*
    Randall D. Katz
    Assistant United States Attorney
    Court Identification No. A5500942
    500 East Broward Boulevard, Suite 700
    Fort Lauderdale, Florida  33394
    Telephone: (954) 346-7255 ext. 3620
    Fax: (954)356-7336
    E-Mail: Randy.Katz@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2010, the undersigned electronically filed the foregoing document, Motion to Continue, with the Clerk of the Court using CM/ECF.

         s/ *Randall D. Katz*
         Randall D. Katz
         Assistant United States Attorney